UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NYACK HOSPITAL,

                                                                                                                                        08 Civ. 11112 (SCR)(PED)

                Plaintiff,

      - against -                                                        REPORT AND
                                                                                RECOMMENDATION

KEVIN MORAN,

                Defendant.
------------------------------------------------------------X

**TO: THE HONORABLE STEPHEN C. ROBINSON
UNITED STATES DISTRICT JUDGE**

## I.    INTRODUCTION

On December 22, 2008, Plaintiff, Nyack Hospital, filed suit against Defendant, a former employee, alleging: (1) a federal claim for violation of the CAN-SPAM Act of 2003, 15 U.S.C. §§ 7704(a)(1) and 7704(a)(2) and ; (2) a federal claim for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.; and (3) state law claims for breaches of fiduciary duty and loyalty. *See* D.E. 1. Defendant timely filed an answer to Plaintiff's complaint on February 2, 2009, and asserted counterclaims for: (1) gender discrimination; (2) sexual harassment; (3) slander and defamation of character; (4) theft; and (5) conversion. *See* D.E. 15. Defendant amended his complaint on January 6, 2010, to include counts for both retaliation and negligence. *See* D.E. 25.[1]

---

[1] Plaintiff requested leave of court on November 6, 2009, to file the referenced amendment. *See* D.E. 20. In the letter to the court seeking leave, Plaintiff indicated he wished to add a claim for "pain/suffering" as well as age discrimination. No such claims were included in the amendment filed by Plaintiff.

Before the Court are the parties' respective motions to dismiss. For the reasons set forth below, I respectfully recommend that the motions be **GRANTED** as to all federal claims.

## II. BACKGROUND

Defendant was formerly employed by Plaintiff as its Manager of Organizational Development. Defendant claims that, during his period of employment, several hospital employees, including the Vice President of Human Resources, the Nurse Recruiter, and the Employment Coordinator, committed various tortious acts, including discrimination, sexual harassment, slander and defamation of character. Plaintiff terminated Moran's employment on November 14, 2008, and asserts that the termination was for cause. Moran denies that the termination was for cause. *See* Answer, ¶ 10. There is no dispute that the employment relationship ended on that date. Defendant claims that after termination, hospital employees converted Defendant's personal property.

Plaintiff asserts that, on December 17, 2008, Defendant sent e-mails, including a 17-page attachment, to over "100 Hospital senior managers and employees" and others and misrepresented the source of the e-mails as David Freed, the president of the hospital. D.E. 1, ¶ 2, 13. The e-mails, as characterized by Plaintiff, "leaked certain aspects of an internal confidential employee survey, defamed the Hospital's reputation and the reputations of the several Hospital employees…and urged the…recipients to report the alleged wrongdoings to the Hospital's Board of Trustees and the Rockland Journal New News." *Id.*, ¶ 15.

As stated above, the parties have filed cross-motions to dismiss. Defendant argues that Plaintiff fails to state a cause of action for which relief can be granted as to

both the CAN-SPAM Act of 2003 and the Computer Fraud and Abuse Act. Plaintiff argues that Defendant's potential federal claims, i.e., discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, should be dismissed for failure to file a complaint with the Equal Employment Opportunity Commission as required by 42 U.S.C. § 2000e-5(e)(1).

### III. DISCUSSION

#### A. Standard of Review

In consideration of a motion filed pursuant to Fed. R. Civ. P. 12(b)(6), a court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *E & L Consulting, Ltd. v. Doman Indus.*, 472 F.3d 23, 28 (2d Cir. 2006). Dismissal is appropriate only where the plaintiffs can prove no set of facts consistent with their complaint that would entitle them to relief. *Electronics Communs. Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240, 242-43 (2d Cir. 1997).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Of course, complaints by *pro se* parties are to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Even in light of *Twombly* and *Iqbal*, the court must "construe [a

3

*pro se* complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002). However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. . . ." 2 Moore's Federal Practice § 12.34[4][a]. at 12-72.7 (2005). Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Id.*, § 12.34[1][b], at 12-61; *see also*, e.g., *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002)(action dismissed because *pro se* plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

    B.    Plaintiff's Claims

    1.    CAN-SPAM Act of 2003

Plaintiff asserts that Defendant's alleged actions violated the CAN-SPAM Act of 2003. The first provision in question, 15 U.S.C. § 7704(a)(1), reads as follows:

> It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or materially misleading.

Plaintiff also alleges Defendant violated a second provision of the Act, specifically 15 U.S.C. § 7704(a)(2), which reads as follows:

> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 5 of the Federal Trade Commission Act (15 U.S.C. 45)).

4

Thus, to constitute a violation of either statutory provision, the message in question must be either a "commercial electronic mail message" or, solely as to § 7704(a)(1), a "transactional or relationship message." The Act defines a "commercial electronic mail message" as:

> any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose).

Plaintiff's Complaint contains no allegation that the primary purpose of the e-mail purportedly sent by Defendant was to advertise or promote a commercial product or service. As the e-mail in question was not a commercial electronic mail message as defined in the Act, Plaintiff cannot state a claim for violation of 15 U.S.C. § 7704(a)(2).

As the e-mail in question is not a commercial electronic mail message, Plaintiff must show alternatively that the e-mail is a "transactional or relationship message" in order to state a claim for violation of 15 U.S.C. § 7704(a)(1). Plaintiff argues that the e-mail is a transactional or relationship message pursuant to the following definition set forth in the Act:

> The term "transactional or relationship message" means an electronic mail message the primary purpose of which is...to provide information directly related to an employment relationship or related benefit plan in which the recipient is currently involved, participating, or enrolled;

15 U.S.C. § 7702(17)(A)(iv). Although Plaintiff has alleged in conclusory terms that "Defendant intended the attachment to:...(b) interfere with the Hospital's relationship's with its employees and the public..." (D.E. 1, ¶ 2), the e-mail itself (and its attachment) is alleged to have "defamed the Hospital's reputation and the reputations of the several Hospital employees, accused Hospital senior management of, among other things,

incompetence, corruption and mismanagement, and urged the e-mails' recipients to report the alleged wrongdoings to the Hospital's Board of Trustees and the Rockland Journal News." D.E. 1, ¶ 15. There is no allegation that the primary purpose of the message was to provide information directly related to a recipient's employment relationship.

The sole case cited by Plaintiff in support of the argument that the e-mail at issue was a "transactional or relationship message" is *Aitken v. Communications Workers of America*, 496 F.Supp.2d 653 (E.D. Va. 2007). In that case, the Court declined to rule as a matter of law that e-mails sent by defendant union outlining the purportedly superior wages and benefits enjoyed by union members to non-union employees were not "transactional or relationship messages." *Id.* at 666-67. The e-mail purportedly sent by Defendant in this matter differs substantively from the union solicitation at issue in *Aitken*. Here, Defendant did not suggest that the recipients take any action that would alter the terms of their employment or related benefit plan while, in *Aitken*, the primary purpose of the message was to communicate a different benefit plan and wage schedule available to employees if they became union members.

Plaintiff argues that, "*among other things*," the e-mail in question was intended to "raise doubts in the minds of Hospital employees…about the competence and honesty of the Hospital's management team and the Human Resources Department" and "create concerns among the Hospital employees…about their own employment futures." Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, D.E. 32, p. 2 (emphasis added). The e-mail in question did not bear on the relationship between Plaintiff and any recipient of the e-mail, but rather spoke to alleged actions and inactions allegedly taken by various hospital administrators and support staff as well as purportedly

6

revealing opinions of unnamed staffers as to the efficacy of hospital management. Absent any supporting authority, the phrase "directly related to an employment relationship" cannot be read to include the type of communication at issue here.

This reading of the statutory definition is consistent with the relevant agency interpretation. The Federal Trade Commission, empowered by 15 U.S.C. § 7711 to issue regulations to implement the CAN-SPAM Act, has decreed that "[i]n applying the term 'transactional or relationship message'…the 'primary purpose' of an electronic mail message shall be deemed to be transactional or relationship if…[it] consists *exclusively* of transactional or relationship content." 16 C.F.R. § 316.3 (emphasis added). The FTC definition of "primary purpose" is persuasive authority. *See*, e.g., *Bragdon v. Abbott*, 524 U.S. 624, 642, 141 L. Ed. 2d 540, 118 S. Ct. 2196 (1998)("The well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance,'")(internal citation omitted). Even if the e-mail is read as having some bearing on a recipient's employment relationship, the content of the e-mail does not exclusively consist of information directly related to that relationship. *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, D.E. 32, p. 2. As the primary purpose of the e-mail at issue was not directly related to a recipient's employment relationship, the referenced e-mail message was not a transactional or relationship message.

The conclusion that the e-mail at issue is not a transactional or relationship message is also supported by an analysis of the definition of that designated subcategory of communication within the context of the CAN-SPAM Act itself. The Supreme Court has held that the Court is required to conduct such an analysis:

> When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute…and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.

*Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S. Ct. 2431, 41 L. Ed. 2d 374 (1974). The objects and policy of the law can be discerned from a statement of policy contained within the statute itself. *See*, e.g., *Lamont v. Frank Soup Bowl, Inc.*, 2001 U.S. Dist. LEXIS 6289, at *11-12 (S.D.N.Y. 2001)(determining intention of Congress with regard to the Fair Labor Standards Act by reference to the Congressional finding and declaration of policy contained therein).[2] As to the CAN-SPAM Act, Congress clearly stated that its concern in enacting the legislation was regulation of *commercial* electronic mail, not electronic mail generally:

> Congressional determination of public policy. On the basis of the findings in subsection (a), the Congress determines that—
>
>   (1) there is a substantial government interest in regulation of commercial electronic mail on a nationwide basis;
>   (2) senders of commercial electronic mail should not mislead recipients as to the source or content of such mail; and
>   (3) recipients of commercial electronic mail have a right to decline to receive additional commercial electronic mail from the same source.

15 U.S.C. § 7701. Congress defined "commercial electronic mail" as "any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose)." 15 U.S.C. § 7702(2)(A). The statute then carves out exceptions from the requirements of the Act for certain types of commercial

---

[2] Copies of all decisions cited herein that are either unpublished or available only on electronic databases have been provided to Defendant. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

8

electronic mail, i.e., transactional or relationship messages. 15 U.S.C. § 7702(2)(B). As defined by the statute, transactional or relationship messages are commercial in nature, specifically those relating to or involving commercial agreements previously entered into by the recipient of such messages:

> Transactional or relationship message.
> (A) In general. The term "transactional or relationship message" means an electronic mail message the primary purpose of which is--
> (i) to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender;
> (ii) to provide warranty information, product recall information, or safety or security information with respect to a commercial product or service used or purchased by the recipient;
> (iii) to provide--
> (I) notification concerning a change in the terms or features of;
> (II) notification of a change in the recipient's standing or status with respect to; or
> (III) at regular periodic intervals, account balance information or other type of account statement with respect to,
> a subscription, membership, account, loan, or comparable ongoing commercial relationship involving the ongoing purchase or use by the recipient of products or services offered by the sender;
> (iv) to provide information directly related to an employment relationship or related benefit plan in which the recipient is currently involved, participating, or enrolled; or
> (v) to deliver goods or services, including product updates or upgrades, that the recipient is entitled to receive under the terms of a transaction that the recipient has previously agreed to enter into with the sender.

15 U.S.C. § 7702(A)(17). While Plaintiff urges the Court to read the e-mail message allegedly sent by Defendant as a transactional or relationship message because it "involved...other employees' current and future relationships with the Hospital", (D.E. 32, p. 3), such a reading would require the Court to extend the statute beyond the base requirement that the messages at issue be commercial in nature. Plaintiff does not allege

9

that the e-mail in question was commercial in nature.[3]

As the e-mail purportedly sent by Moran was neither a commercial electronic mail message nor a transactional or relationship message, it is outside the scope of the CAN-SPAM Act. Plaintiff has failed to state a cause of action for which relief may be granted under the Act.[4]

2.  Violation of the Computer Fraud and Abuse Act

Plaintiff also asserts a claim for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq* ("CFAA"). The elements of a private cause of action under this statute are complex:

> a civil action under subsection 1030(g) of the CFAA requires: (1) establishing the elements of the particular substantive (criminal) offense under subsection 1030(a); (2) establishing that the plaintiff suffered "damage or loss" as a result of such a violation (although some, but not all, such offenses themselves already require "damage" and one now requires "damage and loss"); and (3) establishing one of the five types of conduct specified under subsection (c)(4)(A)(i), which are also required under subsection 1030(g) (some of which might also constitute "damage" or "loss").

*Czech v. Wall St. on Demand, Inc.*, 2009 U.S. Dist. LEXIS 114125, at *18-19 (D. Minn. Dec. 8, 2009). Although Plaintiff does not specify which of the criminal offense

---

[3] In contrast, the Court in the *Aitken* case relied on by Plaintiff found that the union representation proposed in the e-mail at issue there "is a commercial service." 496 F.Supp.2d at 666.

[4] Standing to bring a private cause of action under the CAN-SPAM Act requires that the plaintiff be an internet access service ("IAS") provider. *See* 15 U.S.C. § 7706(g)(1). Plaintiff alleges that it is an IAS provider "by virtue of its' (*sic*) operation of an e-mail system for Hospital employees…" D.E. 1, ¶ 20. The Ninth Circuit recently rejected the proposition that this activity is sufficient to establish standing under the Act. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1051-52 (9th Cir. 2009). Because Defendant has not raised any issue as to Plaintiff's standing, because the reasons set forth above are an adequate basis to dismiss Plaintiff's CAN-SPAM claim, and in the absence of any binding authority on this point, I do not reach the standing question.

subsections of § 1030(a) Defendant is alleged to have violated, Plaintiff's factual allegations track the elements of § 1030(a)(5)(A). However, Plaintiff has not alleged facts sufficient to make out a claim under this prong of the statute.

The underlying criminal statute makes it an offense to "knowingly caus[e] the transmission of…information…and as a result of such conduct intentionally caus[e] damage without authorization[] to a protected computer[.]" 18 U.S.C. § 1030(a)(5)(A). Plaintiff does not allege that Defendant intentionally caused any damage to the hospital's computers, but rather that Plaintiff knew that the sending of bulk e-mail "could result in a 'denial of service' or 'spamming' attack against the Hospital's information system." D.E. 1, paragraph 30. Plaintiff's assertions in response to the Defendant's Motion to Dismiss confirm that Plaintiff does not allege that Plaintiff intended to cause damage to the hospital's information system: "Nyack Hospital alleges that Mr. Moran accessed the Hospital's e-mail system and server by creating a fake Yahoo account…to trick Hospital employees into reading [the e-mail]." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, D.E. 32, pp. 4-5. Thus, Plaintiff has not alleged that Defendant acted with the specific criminal intent required to establish a violation of § 1030(a)(5)(A).

Even assuming that Plaintiff alleges that Defendant sought both to convey slanderous information while at the same time denying service to the system's users—seemingly contradictory goals—Plaintiff does not allege that a "denial of service" actually occurred. Rather, Plaintiff merely alleges that Defendant knew of the possibility of such an occurrence.

The issue of Plaintiff's failure to allege damage resulting from Defendant's

11

purported conduct with specificity is particularly pertinent given the statutory damage requirement set forth in subsection (a)(5)(A). The court in *Czech* confronted a similar, though far more specific, set of allegations regarding unsolicited transmissions and concluded that the complaint was subject to dismissal as the damage allegations were conclusory. In *Czech*, the plaintiff claimed that unwanted text messages from the defendant consumed limited resources on her cell phone, thereby constituting "damage" as required by the statute. *Czech*, 2009 U.S. Dist. LEXIS 114125, at *37-39. The court concluded that absent an allegation of interruption of service, the receipt of an unwanted transmission, even if said transmission were to consume limited electronic resources, did not constitute damage under the CFAA: "It is far from obvious, or even plausible, that a theory of 'damage' under the CFAA was intended by Congress to include situations where the receipt of a… message, albeit unwanted, simply used a [computer] as intended but without causing any actual impairment of the recipient's service." *Id.* at 41. Plaintiff's failure to allege any actual impairment of service resulting from Defendant's purported conduct renders the complaint inadequate to support a cause of action for violation of the CFAA.[5]

Thus, Plaintiff has failed to state a claim for which relief can be granted under the CFAA. Plaintiff's CFAA cause of action should therefore be dismissed.

    C.    Defendant's Claims

---

[5] This is not to say that bulk e-mail could not cause damage as defined in the Act. *See America Online, Inc. v. National Health Care Discount, Inc.*, 121 F. Supp.2d 1255, 1274 (N.D. Iowa 2000)("[W]hen a large volume of [e-mail] causes slowdowns or diminishes the capacity of AOL to serve its customers, an 'impairment' has occurred to the availability' of AOL's 'system.'") However, a litigant would have to prove that the specific e-mails in question alone caused the impairment of service. *Id.* at 1275.

12

Liberally read, Defendant asserts federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* for: (1) gender discrimination; (2) sexual harassment; and (3) retaliation.[6] Prior to filing suit alleging a violation of Title VII, a claimant must file a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and obtain a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(e); *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 613 (2d Cir. 1999). Exhaustion of administrative remedies through the EEOC is "an essential element" of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). Here, Defendant has failed to allege that he properly filed a timely complaint with the EEOC as to either the gender discrimination, sexual harassment, or retaliation claims. His federal counterclaims should therefore be dismissed.

Though Defendant has not provided the Court proof of service of process on the proposed individual third party defendants Freed, Shinick, Moshier, and Russell, it is important to note that no relief can be granted as to individuals under Title VII. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). To the extent, then, that Defendant's causes of action are directed to the individual third party defendants, Plaintiff fails to state a cause of action upon which relief may be granted.

---

[6] Federal law also recognizes causes of action for retaliation based upon the exercise of rights under the First or Fourteenth Amendments under 42 U.S.C. § 1983, a statute which does not require exhaustion of administrative remedies. However, such claims require a showing that the defendant is a state actor. *See Rodriguez v. Clinton*, 2009 U.S. App. LEXIS 27772, at *2 (2d Cir. 2009)(dismissing claim of retaliation in violation of First Amendment rights); *DD v. Hall*, 2009 U.S. Dist. LEXIS 125199, at *22-23 (S.D.N.Y. 2009)(recommending dismissal of Fourteenth Amendment retaliation claim due to failure to allege state action). As Defendant has not alleged that Plaintiff is a state actor, and there is no apparent reason to believe that such is the case, possible § 1983 claims are not addressed herein.

In New York, discrimination complaints must be filed with the EEOC within 300 days of the alleged unlawful employment practices. *See Baroor v. N.Y. City Dep't of Educ.*, 2010 U.S. App. LEXIS 1399, at *3 (2d Cir. 2010). As it is undisputed that Defendant's employment was terminated on November 14, 2008, Defendant would have to have filed any EEOC complaint no later than September 10, 2009, in order to meet the statutory prerequisite for the filing of a Title VII complaint. To the extent that Defendant is permitted to replead any cause of action under Title VII, the undersigned respectfully recommends that Defendant be required to attach documents demonstrating compliance with the statutory prerequisite.

D.   State Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims raised by the parties if "the district court has dismissed all claims over which it has original jurisdiction." Because I recommend that all federal claims alleged by both Plaintiff and Defendant be dismissed, I also respectfully recommend that the Court decline to exercise supplemental jurisdiction over the remaining claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors…will point toward declining to exercise jurisdiction over the remaining state-law claims.")

**IV.   CONCLUSION**

For the reasons set forth above, I respectfully recommend that Defendant's Motion to Dismiss Plaintiff's claims under the CAN-SPAM Act of 2003 and the Computer Fraud and Abuse Act be **GRANTED**. I further recommend that Plaintiff's

Motion to Dismiss Defendant's Counterclaims for gender discrimination, sexual harassment, and retaliation be **GRANTED**. Finally, I recommend the Court decline to exercise supplemental jurisdiction over the parties' remaining state law claims in the absence of any federal question.

## V.     NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of seventeen 17 working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated:   June 1, 2010
         White Plains, N.Y.

                                             Respectfully submitted,

                                             [signature]
                                             PAUL E. DAVISON
                                             UNITED STATES MAGISTRATE JUDGE

Copies of the Report and Recommendation shall be mailed to counsel for Plaintiff and to Defendant *pro se* by the Court.